1084

**FERRELL et al. v. ERTEL et al.**
No. 13425.

Court of Civil Appeals of Texas. Fort
Worth.
Nov. 27, 1936.

Rehearing Denied Jan. 15, 1937.

See, also, 94 S.W.(2d) 827.

Slay & Simon, of Fort Worth, for appellant R. R. Ferrell.

Charles Kassel and Melvin F. Adler, both of Fort Worth, for appellee Wm. Cameron & Co., Inc.

Arthur Lee Moore, of Fort Worth, pro per.

A. B. Culbertson, of Fort Worth, for H. T. Dean, receiver.

McGown & McGown, of Fort Worth, for Continental Supply Co.

SPEER, Justice.

The appeal before us grows out of a receivership proceeding instituted in 1931 against the Ertel Oil Properties, Inc., a private corporation.

It was shown the defendant corporation owned an oil and gas lease on about 73 acres of land in Williamson county, Tex., and that on the lease there were six producing oil wells.

While the suit was pending, twenty-seven creditors procured leave and filed interventions, asserting their respective debts; some were alleged to be secured by mechanic's, materialmen's, statutory, and constitutional liens respectively.

On March 1, 1933, the resignation of a former receiver was by the court accepted and H. T. Dean was appointed receiver in place of the one who resigned.

On March 20, 1933, the court appointed T. P. Perkins and A. B. Culbertson, composing the law firm of Perkins & Culbertson, as attorneys to represent the receiver in all matters affecting the properties.

An order of the court was entered on October 2, 1935, which allowed some of the claims of interveners and disallowed others, and in some cases declared certain claims to be secured by liens on the properties.

Among the interveners were R. R. Ferrell and Wm. Cameron & Co., Inc.; the latter presented two claims, one of which was designated as claim No. 2. In this appeal it will only be necessary for us to discuss claim No. 2 of Cameron & Co., and that of R. R. Ferrell.

The Cameron claim No. 2 was for $3,350 alleged to be incurred by the claimant's assignors for "the erection of one power house complete, tearing down three 112-foot derricks, the erection of 112-foot derrick and pipe rack, and the erection of four 64-foot derricks."

The claim presented by R. R. Ferrell was made up of six items aggregating $16,104.39, shown to have been purchased by him from other claimants.

On October 2, 1935, a hearing was had by the court on the claims presented by all interveners to the receiver; at this hearing the judgment or order of the court recites that all interveners having been given notice of such hearing, and no jury being demanded, matters of fact as well as of law were submitted to the court. Upon this hearing, claim No. 2 of Wm. Cameron & Co., Inc., for $3,350 was allowed by the court for only $1,951.38 and found that the same stood secured by a statutory mechanic's and materialman's lien to the extent of $854.78 and a constitutional mechanic's and materialman's lien to the extent of $1,096.60, on the oil and gas leases owned by the Ertel Oil Properties, Inc., and in the hands of the receiver on the lands thereinabove described.

In the same order under the date last above mentioned, the court heard the presentation of the claim by R. R. Ferrell, composed of six items aggregating $16,104.39, and allowed and approved the claim for only $13,663.35. The order further provided that of the above amount allowed, the sum of $3,933.70 was secured by a materialman's lien on the oil and gas lease owned by the Ertel Oil Properties, Inc., in the hands of the receiver and therein above described. That the remainder of Ferrell's claim amounting to $9,729.65 was unsecured, and was a general claim against the properties.

The order of the court on October 2, 1935, passed upon the claims of all interveners including the two herein referred to, and was, in the nature of the matters covered, lengthy, and no useful purpose can be served in here showing more specifically its details, except we think we should copy its concluding paragraph, which reads: "The court by this decree does not pass upon the priority of said claims, except as hereinabove set out, but which said priority shall be hereafter determined, and the court further withholds any action with regard to the allowance of interest on any of the claims hereinabove allowed, and the hearing with regard to the allowance of interest on any of the claims hereinabove set out shall be and is hereby passed for future determination." The record does not disclose that either of the claimants excepted to the order of the court allowing the claims mentioned, nor was any notice of appeal therefrom given.

On October 18, 1935, the court entered an order allowing attorneys' fees to T. P. Perkins and A. B. Culbertson as compensation for services rendered to the receiver under an order of the court appointing said attorneys, in the sum of $3,850. The order recites that said amount is allowed as a part of the court costs and ad-

ministration costs in the case. The intervener R. R. Ferrell excepted to this order and gave notice of appeal.

On November 8, 1935, the court entered an order reciting, among other things:

"Came on to be considered by the court the allowance of interest on the claims of Continental Supply Company, Wm. Cameron & Co., Inc., and R. R. Ferrell, heretofore allowed as being secured by Mechanic's and Materialmen's Liens as set out in the order of this court dated October 2, 1935, and the court, after having heard argument in support of such claim for interest by counsel for such claimants and against such claim by counsel for the receiver is of the opinion that interest should be allowed on such claims from and after January 1, 1931, at the rate of six per cent. per annum.

"And thereupon came on to be considered by the court the matter of propriety (priorities) of all claims herein filed and allowed, and the court after having heard argument by and on behalf of each class of claims filed and allowed herein. * * *" Found that all items theretofore allowed under his order of October 2, 1935, and October 18, 1935, as costs of court and as costs of administration be given priority of payment over all other claims filed and allowed except the claim of Continental Supply Company, which claim should have priority over all others. That the claim of Wm. Cameron & Co., Inc., including interest, and that part of the claim of R. R. Ferrell theretofore allowed as being secured by a mechanic's and/or materialman's lien, including interest, be given priority of payment over all unsecured claims. The decree further specifically orders the receiver to disburse funds coming into his hands in keeping with that order, (1) to the payment of operating expenses of the lease; (2) to the claim of the Continental Supply Company; (3) to the payment of costs of court and administration expenses; (4) to the payment of the claim of Wm. Cameron & Co., Inc., and to the amount of the claim of R. R. Ferrell theretofore decreed to be secured by a lien on the oil properties, ratably between the parties; and (5) to pay ratably between all unsecured creditors whose claims had been allowed except that of E. E. Ertel, which said last-named claim was made inferior and subordinate to all other claims. To this decree and order the claimant R. R.

Ferrell excepted and gave notice of appeal as required by law.

The receiver, H. T. Dean, and claimant Wm. Cameron & Co., Inc., are resisting the appeal, and for convenience we will refer to R. R. Ferrell as appellant and the other named parties as appellees.

Appellant presents five assignments of error. The substance of each is as follows: (1) The court erred in allowing Wm. Cameron & Co., Inc., a lien on the leasehold estate and all appurtenances thereto to secure the whole of its indebtedness, when the agreement between the parties in the statement of facts shows it had a constitutional lien on the power house only for that part of its claim known as the Sanford & Lang debt. (2) The court erred in ordering the receiver to pay Cameron & Company, Inc., the full amount of its indebtedness ahead of the claims of Ferrell approved as an unsecured debt. (3) The court erred in allowing the firm of Perkins & Culbertson a fee for services rendered in representing the receiver in filing objections to the claims of interveners for the reason such services were not a proper function of the receiver. (4) The court erred in allowing the firm of Perkins & Culbertson a fee of $3,850 for the unsuccessful attempt to defeat the claims of appellant and ordering it paid ahead of the unsecured claim of appellant. And (5) the amount of the fee allowed by the court to Perkins & Culbertson was excessive.

 This appeal is perfected, as shown by appellant's appeal bond, filed December 7, 1935, from the judgment of the court entered on November 8, 1935. The judgment or order fixing the fee of Perkins & Culbertson was entered on October 18, 1935; the appeal was not perfected in time to bring before us that judgment, and if it was final in the matter then before the court, there being no appeal from it, we are without jurisdiction to review it. We do not believe that because the judgment of November 8, from which this appeal is taken, wherein it undertook to give priority to the claim for attorneys fees, was necessary or could affect the finality of the judgment fixing the fees. Those fees were allowed as costs and expenses of administering the estate and priority of payment is fixed by law rather than by an order of the court, and any attempt on the part of the court to fix such priority is surplusage, and did not affect

the previous judgment. R.C.S. art. 2299; Tex.Jur. vol. 36, p. 167, § 78; Id. p. 261, § 133; International & G. N. Ry. Co. v. Wentworth, 8 Tex.Civ.App. 5, 27 S.W. 680; Sligh v. Stanley (Tex.Civ.App.) 204 S.W. 700; Payne v. Little Motor Kar Co. (Tex.Civ.App.) 266 S.W. 597 (writ dismissed). Assignments of error 3, 4, and 5 complain of the judgment entered October 18, 1935, which judgment we hold was a final one. There being no appeal from it, we cannot consider the assignments of error complaining of it.

Assignments of error 1 and 2 are based on the order passed by the court on October 2, 1935, wherein the claim of Wm. Cameron & Co., Inc., was reduced and allowed in the amount above shown and declared to be secured by a mechanic's and materialman's lien to the extent of $854.78 and by a constitutional mechanic's and materialman's lien to the extent of $1,096.60, on the entire leasehold.

In a case of this character where there are so many interveners, it becomes necessary and it is proper for the court to make preliminary and interlocutory orders as the case progresses. We have seen that on October 2, 1935, all claims were presented for approval, rejection, or modification, and while some claimants excepted and gave notice of appeal from the order, no such appeals were prosecuted; the appellant here did not treat such order as final by excepting to it and giving notice of appeal. The judgment on its face shows certain phases of it were not disposed of, since the matter of priorities in payment and interest were specifically reserved by the court to be determined later, as will be seen from that part quoted by us above. The order of November 8, 1935, was based upon the provisions in the order of October 2, and by its terms made that order a part of it. The November 8 order would have been meaningless without reading into it the previous one. It took both to make a final judgment on the issues before the court. We hold the order of October 2 was only an interlocutory one, and did not become a final judgment until incorporated as it was into the decree entered on November 8.

The recitation in appellant's appeal bond that he was appealing from the judgment of November 8, 1935, was proper and we hold it entitled him to bring before us for review the acts of the court shown in the interlocutory order of October 2, which was a part of the judgment appealed from.

We are cited by appellees to our holding in Ferrell v. Ertel, 94 S.W.(2d) 827, in which it is claimed we held the orders of October 2, and November 8, were separate and distinct and each were final judgments. We believe a careful reading of that opinion will not warrant that conclusion. That was on a motion to dismiss an appeal, and Associate Justice Brown, speaking for the court, held in the original opinion that the order of November 8th was not a final judgment from which an appeal could be prosecuted and ordered the appeal dismissed; but on motion for rehearing, a different conclusion was reached under authority of Keystone Pipe & Supply Co. v. Liberty Refining Co. (Tex.Com.App.) 260 S.W. 1018, and the case was reinstated. The last-cited case which this court followed was in some respects like the one now before us. A receivership was pending where the rights of interveners were involved. A master in chancery had been appointed to hear and pass upon claims of interveners; the master made his report to the court and it was said: "The master in chancery filed his report as above indicated and further undertook to determine the priority of the liens so found, and declared that the appellee's claim for $52,486.98 was a prior lien to that of appellant for $1,469.19." The court adopted the report. In the case at bar the order of October 2 only allowed the several claims and declared a lien securing certain of them, but did not attempt to pass on priorities, and specially reserved the right to determine such matters at a later date, when on November 8th he concluded the matters of allowing interest and adjudged priorities. In the Keystone Pipe & Supply Company Case, supra, the court quoted with approval from the old case of Cannon v. Hemphill, 7 Tex. 184, where it was said: "The character of the judgment must be tested by its operation on the objects sought to be attained by the proceeding. If the cause be determined on its merits; if the rights, controverted between the parties, be settled, the decree will be final, although ulterior proceedings, to carry the judgment into effect, may be required."

In the case of Patrick v. Gibbs, 17 Tex. 275, the Supreme Court had before it a similar question to that before us. There a commissioner had been appointed by the

court to ascertain certain facts with reference to a claimant's debt, the duty was performed and reported back to the court; the report was approved and by order of the court was put into effect. The court held: "The report of the Commissioner appointed by the interlocutory decree, to ascertain the amount of the defendant's indebtedness, is made a part of the record, and is confirmed by the final decree; and, looking to the whole record, there can be no doubt of the finality of the decree, and no uncertainty as to the matter adjudged." The order fixing the amounts of the claims presented by interveners, entered October 2d, was equivalent to a report by a commissioner appointed to ascertain the facts relating thereto, and the further decree of November 8th, putting such findings into effect ·and determining the matters specially reserved in the former order for a later hearing, necessarily requires the reading of the two orders together to· arrive at a final judgment.

The case of Metropolitan Trust Co. et al. v. Farmers' & Merchants' National Bank et al., 89 Tex. 329, 34 S.W. 736, 737, supports the conclusion we have reached on this point. In that case many interveners filed claims against a pending receivership and by as many. orders of the court their equities were determined from time to time and a final judgment was rendered in the case making effective these several decrees concerning each. There the court said: "The fact that an intervention in a case like that before us may be treated, for the purpose of an'appeal, as a distinct case, affords no sufficient reason why the final judgment which settles the priority of liens, or recognizes the priority as previously adjudged in each intervention, may not be appealed from as one judgment. A separate appeal from the judgment upon each intervention causes unnecessary labor and expense, and, in our opinion, is a practice not to be encouraged."

Upon these authorities we hold the order entered on November 8th, when taken in connection with that of October 2d, to which it refers, constitutes a final judgment in the matters determined, and on appeal both may be reviewed by this court.

We shall therefore consider appellant's first and second assignments of error together, since they both relate to the action of the court in allowing Wm. Cameron & Co., Inc., a materialman's and mechanic's lien on the entire lease to secure the whole of its allowed claim.

■ It is complained that the court erred in decreeing a constitutional mechanic's and materialman's lien on the whole lease to secure $1,096.60 of Cameron & Co.'s claim. In this we think the assignments are well taken.

The claim as presented was for a much larger amount than that allowed by the court and was said to be for building a power house complete, tearing down certain derricks and derrick and pipe racks, and building . derricks. No constitutional lien existed on the whole lease for the·construction of the power house.

The provisions of article 16, § 37, of our Constitution under which the lien is claimed, reads:

"Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

■ This provision of the Constitution has many times been held to be self-enacting, and does not depend upon legislative enactment for its enforcement. McBride v. Beakley (Tex.Civ.App.) 203 S.W. 1137; Wichita Falls Sash & Door Co. v. Jackson (Tex.Civ.App.) 203 S.W. 100; City Nat. Bank, Wichita Falls v. Laughlin (Tex. Civ.App.) 210 S.W. 617; Fagan & Osgood v. Boyle Ice Machine Co., 65 Tex. 324; Warner Elev. Co. v. Maverick, 88 Tex. 489, 30 S.W. 437, 31 S.W. 353, 499; Aston v. Allison (Tex.Civ.App.) 91 S.W.(2d) 852. There is no question raised by appellant that Cameron & Co. did not have a constitutional lien to secure a portion of the debt, but it is contended that the lien existed only to secure the cost of the power house, and that' the lien was only on the house so constructed. In this we think he is correct, with the exception next noted.

■ The constitutional provision under which Cameron & Co. claimed a lien provides that such lien shall exist against the "building," but this has been construed to mean the building and so much of the land upon which it' stands as is necessary for its enjoyment. Strang v. Pray, 89 Tex. 525, 35 S.W. 1054; Bryant-Link Co. v. Norris Lumber Co. (Tex.Civ.App.) 61 S. W.(2d) 160 (writ dismissed).

■■ The amount of land necessary for the enjoyment of the building on this lease

is a question of fact as is also the amount unpaid for the construction of the building. The statement of facts before us discloses that no proof was offered to establish either of these facts, but in lieu of such proof there is an agreement between counsel for the receiver and Cameron & Co. shown, which reads: "It is agreed that William Cameron & Company is entitled to a judgment establishing their debt of $2,346.60, that $1,250.00 of that is secured by a mechanic's lien as filed, and the balance of it is secured by a constitutional lien on the power house only." This agreement eliminates the necessity of proof to establish those facts. Under this agreement of facts, Cameron & Co. was entitled to a constitutional lien as against the "power house" only to secure $1,096.60. The judgment of the court complained of decreed a lien on the whole lease to secure the payment of that amount. Such judgment was not only contrary to the agreed facts but in the face of the constitutional provision above quoted.

■ One phase of this case was before us in a proceeding by R. R. Ferrell v. W. E. Alexander, District Clerk, 96 S.W.(2d) 88, by an application for writ of mandamus to require the respondent to accept, approve, and file a supersedeas appeal bond, and in that proceeding it was shown that under order of the court, the receiver, H. T. Dean, had sold all of the physical assets belonging to the Ertel Oil Properties, Inc., for the sum of $15,500 cash. We may therefore take judicial knowledge of the fact that said property has been sold for the price mentioned; the intervener Ferrell excepted to that judgment and gave notice of appeal to this court, and it was in that appeal the writ of mandamus was sought.

The record does not show that the power house was sold separate from the remainder of the leasehold.

■ The materialman's, mechanic's, and constitutional liens securing the whole of the Cameron claim were created between November 1, 1930, and December 24th of the same year and those required to be so fixed were filed in the office of the county clerk of Williamson county, Tex., on January 16, 1931. The constitutional lien securing the cost of the power house became effective simultaneously with the other liens created at the same time, and they are all of equal dignity, and neither can be said to have a priority over the other, and the trial court so treated them.

For the error of the trial court in decreeing that the amount due for the construction of the power house was secured by a constitutional, mechanic's, and materialman's lien on the whole of the leasehold, that part of the judgment must be reversed for another trial.

■ There is no finding by the court that the constitutional mechanic's lien was created prior to other classes of mechanic's and materialmen's liens, but there is a finding that the claim of Continental Supply Company is secured by a prior lien to all other claims, but in the matter of priorities between Cameron & Co. and Ferrell, in so far as a part of the latter's claim was secured, no priority is found by the court, and we must assume the evidence supported the court's findings in the absence of complaint by appellant.

The constitutional mechanic's lien securing a part of the Cameron & Co. claim attached to the building and some part of the leasehold in the land, but the court having found a prior and superior mechanic's lien existed against the leasehold for the payment of Continental Supply Company debt and costs of administration, the constitutional lien must be subjected to the prior one. A sale of the leasehold was made without respect to the constitutional lien for the construction of the power house.

Upon another trial it will be necessary for the court to determine (1) the amount unpaid on the construction of the power house; (2) the value of the power house at the date of the sale. Upon ascertaining these facts, the value of the power house should be ordered paid to Cameron & Co. on that part of its debt secured by a constitutional lien; if there be more than enough to pay that part of its debt, the excess should be disbursed pro rata to general unsecured creditors. Should the value of the power house as found be insufficient to pay that part of the debt secured by the constitutional lien, any amount remaining unpaid should be classed and thereafter considered an unsecured claim against the estate, and be paid pro rata with other such claims.

We therefore reverse the judgment of the trial court wherein it was declared that the balance unpaid on the claim to William Cameron & Co., Inc., for construction of the power house was secured by a constitutional mechanic's and materialman's lien on the leasehold estate in the hands of the receiver, and direct that upon another trial

the conclusions herein announced be followed with respect thereto. In all other respects, the judgment of the trial court is affirmed.